UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA

    - v. -

WILSON JAMES BASTON, JR.,
    a/k/a "Wil James,"
    a/k/a "Will James,"

        Defendant.

INDICTMENT


07 CRIM 750


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: AUG 1 3 2007

### COUNTS ONE THROUGH ELEVEN

(Mail Fraud)

The Grand Jury charges:

**Relevant Persons and Entities**

1.  At all times relevant to this Indictment, WILSON JAMES BASTON, JR., a/k/a "Wil James," a/k/a "Will James," the defendant ("BASTON"), was the President of Will James Equity Partners, Inc.

2.  At all times relevant to this Indictment, Will James Equity Partners, Inc., purported to be a real estate investment program which purchased distressed properties in the New York City area as investment vehicles for long and short-term investors.

3.  At all times relevant to this Indictment, Will James Equity Partners, Inc., maintained its principal office at 16 Court Street, Suite 1700, Brooklyn, New York.

## **Overview of the Scheme to Defraud**

4.  At all times relevant to this Indictment, BASTON utilized Will James Equity Partners, Inc., to facilitate a scheme to defraud investors out of millions of dollars.

5.  Beginning in or about 2002, BASTON operated Will James Equity Partners, Inc., as an investment program through which BASTON obtained funds from long and short-term investors in order to purchase distressed properties in the New York City area. BASTON made false promises of guaranteed short-term, high rates of return on investments in these distressed properties, with additional guarantees on the principal investment. On many occasions, BASTON initially repaid both the invested principal and interest as promised. This served to entice his investors to continue investing in Will James Equity Partners, Inc., and in most cases, to invest additional, larger sums of money. BASTON then ceased paying the victims the promised interest and did not return the principal. Eventually, when the victims began to complain to BASTON about getting their money as promised, BASTON employed a variety of lulling tactics and avoided responding to their calls and inquiries. When BASTON was unable to avoid these victims, BASTON made false excuses and explanations as to why they had not been paid. In some instances, BASTON paid these complaining victims with the funds he received from newer investors, rather than from any alleged investments.

6. BASTON recruited over seventy investors in Will James Equity Partners, Inc., most of whom eventually lost large sums of money after being defrauded by BASTON (collectively the "Victims," including "Victim #1" - "Victim #12," as discussed in more detail below).

### The Solicitation of Investors

7. BASTON employed a number of staff members at Will James Equity Partners, Inc., who assisted in the recruitment and solicitation of individuals to invest in the enterprise. BASTON and his associates met potential investors at various locations including the investors' offices, restaurants in Manhattan and Brooklyn, and at BASTON's office at 16 Court Street in Brooklyn, New York.

8. BASTON recruited investors to invest in Will James Equity Partners, Inc., through a variety of means including "word-of-mouth" referrals, classified advertisements in newspapers such as the New York Times, and promotional literature. According to a promotional brochure, Will James Equity Partners, Inc., purchased so-called "pre-foreclosure" property using funds from "a variety of equity partners," with terms determined on an individualized, venture-by-venture basis. The "equity partners are securitized by first mortgages on the property; paid interest at above market rates; and receive their full equity loan in a balloon payment together with an agreed

upon bonus at the sale of the renovated property." Also according to the promotional brochure, investments in Will James Equity Partners, Inc., started at $25,000, and could be held for "as little as 14 days or as long as 18 months." The brochure further promised rates of returns ranging from ten to thirty percent, based on the equity in the property being acquired.

9. BASTON informed these investors that they could make a significant amount of money by investing in BASTON's purchases of distressed and pre-foreclosure real estate properties. BASTON obtained investors' funds by making false promises of guaranteed high rates of return on these investments in the short term, with additional guarantees on the principal investment. BASTON documented the terms of these investments in "Promissory Notes" in which he promised to pay interest rates, often as high as twenty or thirty percent, payable to the investors along with a guaranteed return on their principal balance within short periods of time, often thirty days or less.

### Operation of the Scheme to Defraud

10. Individuals who agreed to invest money in Will James Equity Partners, Inc. provided the funds in a variety of ways. For example, some individuals sent personal or bank checks to BASTON and others initiated wire transfers from or through out-of-state banks to bank accounts belonging to Will James Equity Partners, Inc. in New York, New York, and Brooklyn, New

York.  BASTON communicated with investors through a variety of means, including facsimiles and e-mails sent through out-of-state computer servers.

11.  After receiving initial investments from the Victims who believed BASTON would make good on his promises, BASTON would often, at least in the beginning, repay both their interest and principal as promised.  To make these initial payments to new Victims, BASTON used monies from other investors, rather than from purchasing, renovating, and "flipping" or reselling "pre-foreclosure" properties as he had described to investors.  Because the Victims believed these initial "investments" to be successful, and that Will James Equity Partners, Inc., was legitimate and profitable, and that BASTON was trustworthy, the Victims thereafter agreed to roll-over their invested funds into new investments, or often invested additional, larger sums of money in the scheme.

### The Collapse of the Scheme

12.  Once the Victims invested a significant amount of money in Will James Equity Partners, Inc., BASTON ceased paying them the promised interest and did not return their principal.  Eventually, when the victims began to complain to BASTON that he had deceived them, BASTON employed a variety of lulling tactics and avoided responding to their calls and inquiries.  BASTON specifically instructed his remaining staff members to deflect

inquiries from victims in order to avoid them. When BASTON was unable to avoid these victims, BASTON made false excuses and explanations as to why they had not been paid. Despite his claims to victims that Will James Equity Partners, Inc., had financial difficulties and was unable to pay back its current investors, BASTON continued to recruit new investors in Will James Equity Partners, Inc., by falsely representing the enterprise's success. In some instances, BASTON paid the most vocal victims who had been able to reach him with the funds he received from these newer investors, rather than from any returns on their alleged investments.

      13. One of methods BASTON employed to deter his victims from reporting his activities to law enforcement was to hold meetings and send letters attempting to allay victims' fears that he had defrauded them. For example, on February 22, 2006, BASTON held a meeting at the Marriott Hotel in Brooklyn, New York, at which he advised the victims in attendance that he had been unable to pay back their "guaranteed" principal and interest as promised because of "financial constraints" facing Will James Equity Partners, Inc. BASTON also proposed entering into new "Settlement Agreements" with the victims to memorialize the amount owed to each one. On or about July 10, 2006, and again on July 19, 2006, BASTON sent letters to the victims providing a contact telephone number for victims to call to provide the

specifics of the monies they were owed. According to victims who subsequently called this line, BASTON never returned their phone calls nor attempted to pay back the monies BASTON had taken from them.

14. By late 2006, BASTON was virtually unreachable by all victims: BASTON shutdown the Will James Equity Partners, Inc., website; ceased answering his cellular telephone; and stopped going to the 16 Court Street office in Brooklyn, New York, which was soon thereafter abandoned by BASTON and his staff members.

15. In total, BASTON obtained over $10,000,000.00 from his victims based on fraud and false pretenses.

### Statutory Allegations

16. On or about the dates set forth below, in the Southern District of New York and elsewhere, WILSON JAMES BASTON, JR., a/k/a "Wil James," a/k/a "Will James," the defendant, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, for the purpose of executing such scheme and artifice and attempting so to do, unlawfully, wilfully and knowingly did place in a post office and authorized depository for mail matter matters and things to be sent and delivered by the United States Postal Service, and did deposit and cause to be deposited matters and

things to be sent and delivered by private and commercial interstate carrier, and did take and receive therefrom, such matters and things, and did knowingly cause to be delivered by mail and such carrier according to the direction thereon, and at the place at which it was directed to be delivered by the person to whom it was addressed, such matters and things, to wit, BASTON caused the following matters and things to be mailed and delivered in furtherance of his scheme:

| COUNT | DATE | FROM | TO | NATURE OF MAILING |
|---|---|---|---|---|
| ONE | 6/27/05 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #1 in New York, NY | Promissory Note in connection with investment of $1,380,000 sent via Federal Express |
| TWO | 2/10/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #2 in Bronx, NY | Letter dated 2/10/2006 re: 2/22/2006 investor meeting sent via U.S. Postal Service |
| THREE | 3/27/06 | Victim #2 in Bronx, NY | Will James Equity Partners, Inc., Brooklyn, NY | Letter sent via U.S. Postal Service |
| FOUR | 4/6/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #3 in New York, NY | Client Summary Report sent via U.S. Postal Service |
| FIVE | 4/19/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #4 in Bronx, NY | Agreement re: "cash flow problems" sent via U.S. Postal Service |

| COUNT | DATE | FROM | TO | NATURE OF MAILING |
|---|---|---|---|---|
| SIX | 6/27/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #5 in Bronx, NY | Letter dated 6/20/2006 re: 2/22/2006 investor meeting sent via U.S. Postal Service |
| SEVEN | 6/27/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #2 in Bronx, NY | Letter dated 6/20/2006 re: 2/22/2006 investor meeting sent via U.S. Postal Service |
| EIGHT | 7/5/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #6 in Bronx, NY | Letter dated 6/20/2006 re: 2/22/2006 investor meeting sent via U.S. Postal Service |
| NINE | 7/10/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #2 in Bronx, NY | Letter dated 7/10/2006 re: investor complaint line sent via U.S. Postal Service |
| TEN | 7/12/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #6 in Bronx, NY | Letter dated 7/10/2006 re: investor complaint line sent via U.S. Postal Service |
| ELEVEN | 7/19/06 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #2 in Bronx, NY | Letter dated 7/19/2006 re: investor complaint line sent via U.S. Postal Service |

(Title 18, United States Code, Sections 1341 and 2.)

## COUNTS TWELVE THROUGH SEVENTEEN

(Wire Fraud)

The Grand Jury further charges:

17. The allegations contained in paragraphs 1 through 15 above are hereby repeated, realleged and incorporated by reference as if fully set forth herein.

18. On or about the dates set forth below, in the Southern District of New York and elsewhere, WILSON JAMES BASTON, JR., a/k/a "Wil James," a/k/a "Will James," the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money by means of false and fraudulent pretenses, representations and promises, unlawfully, willfully, and knowingly, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice; to wit, BASTON caused the following wire transmissions to be made in furtherance of his scheme:

| COUNT | DATE | FROM | TO | NATURE OF WIRE |
|---|---|---|---|---|
| TWELVE | 6/23/05 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #1 in New York, NY | E-mail regarding investment of $1,380,000 |
| THIRTEEN | 9/23/05 | Bank account of Victim #7 and Victim #8 (in New York) | Will James Equity Partners, Inc., bank account in New York, NY | Wire transfer of $625,000 |

| COUNT | DATE | FROM | TO | NATURE OF WIRE |
|---|---|---|---|---|
| FOURTEEN | 9/26/05 | Bank account of Victim #9 (in Maryland) | Will James Equity Partners, Inc., bank account in New York, NY | Wire transfer of $55,000 |
| FIFTEEN | 9/26/05 | Bank account of Victim #10 (in Nevada) | Will James Equity Partners, Inc., bank account in New York, NY | Wire transfer of $75,000 |
| SIXTEEN | 10/20/05 | Will James Equity Partners, Inc., Brooklyn, NY | Victim #11 in New York, NY | E-mail regarding investor complaint |
| SEVENTEEN | 12/2/05 | Bank account of Victim #12 (in New York) | Will James Equity Partners, Inc., bank account in New York, NY | Wire transfer of $20,000 |

(Title 18, United States Code, Sections 1343 and 2).

**FORFEITURE ALLEGATION**

19. As the result of committing the offenses of mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, WILSON JAMES BASTON, JR., a/k/a "Wil James," a/k/a "Will James," the defendant, shall forfeit to the United States pursuant to 18 U.S.C. § 982, any property, constituting or derived from proceeds obtained directly or indirectly as a result of the mail fraud and wire fraud offenses, including but not limited to the following:

    a.  A sum of money equal to approximately $10,000,000.00 in United States currency, representing the amount of proceeds obtained as a result of the mail fraud and wire fraud offenses for which the defendant is liable.

Substitute Assets Provision

b.  If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant --

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty; it is the intention of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Section 982; and Title 18, United States Code Section 1344.)

_____          _____
FOREPERSON                         MICHAEL J. GARCIA
                                   United States Attorney for the
                                   Southern District of New York

-12-

Form No. USA-33s-274 (Ed. 9-25-58)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

WILSON JAMES BASTON, JR.,
a/k/a "Wil James,"
a/k/a "Will James,"

Defendant.

**INDICTMENT**

07 Cr. _____ (___)

(Title 18, United States Code,
Sections 1341, 1343, and 2.)

MICHAEL J. GARCIA
United States Attorney.

A TRUE BILL

_____
Foreperson.

8/13/07 TLC: Post 11/1/87 indictment filed.
Assigned to Judge Baer.

Peck, MJ